UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PETER ANTHONY BAKOWSKI,

v.                                    Case No. 8:13-cv-1246-T-33AEP
                                                8:09-cr-491-T-33AEP

UNITED STATES OF AMERICA.
_____/

**ORDER**

This matter comes before the Court pursuant to Peter
Anthony Bakowski's Third Amended Motion Under 28 U.S.C. §
2255 To Vacate, Set Aside, or Correct Sentence by a Person in
Federal Custody (Doc. # 24), filed on March 27, 2014. On June
30, 2014, the Government filed a response in opposition to
the Motion. (Doc. # 30). Bakowski then filed a reply in
support of his section 2255 Motion on August 25, 2014. (Doc.
# 35). A review of the record demonstrates that, for the
following reasons, Bakowski's Motion must be denied.

Furthermore, pursuant to Rule 8(a) of the Rules
Governing Section 2255 Proceedings, this Court has determined
that an evidentiary hearing is not necessary for the
adjudication of this section 2255 Motion. No hearing is
required when the record establishes conclusively that a
section 2255 motion lacks merit. United States v. Lagrone,
727 F.2d 1037, 1038 (11th Cir. 1984). In addition, "A district

court need not conduct an evidentiary hearing 'where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous.'" <u>Pericles v. United States</u>, No. 12-14505, 2014 U.S. App. LEXIS 9767, at *11, n.4 (11th Cir. March 28, 2014)(citing <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002)).

## <u>PROCEDURAL HISTORY</u>

On November 17, 2009, pursuant to a written plea agreement, Bakowski pled guilty to count one of an information, charging him with one count of making a false statement to a financial institution in violation of 18 U.S.C. § 1014. (CR Doc. # 11). This charge stemmed from Bakowski's mortgage fraud scheme, involving the re-sale of mortgages on the same properties two or three times without revealing the existence of the earlier mortgages and misrepresenting that existing mortgages had been satisfied. (CR Doc. # 5 at 12-15). Bakowski's plea agreement included the following provision waiving his rights to directly appeal and to collaterally attack his sentence:

> The defendant . . . expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that

2

the sentence exceeds the defendant's applicable
guidelines range <u>as determined by the Court</u>
pursuant to the United States Sentencing
Guidelines; (b) the ground that the sentence
exceeds the statutory maximum penalty; or (c) the
ground that the sentence violates the Eighth
Amendment to the Constitution; provided, however,
that if the government exercises its right to
appeal the sentence imposed, as authorized by 18
U.S.C. § 3742(b), then the defendant is released
from his waiver and may appeal the sentence as
authorized by 18 U.S.C. § 3742(a).

(CR Doc. # 5 at 9-10) (emphasis in original).

During the subsequent sentencing hearing, the Court initially sentenced Bakowski at the high end of the applicable guidelines range (151 to 188 months' imprisonment) to 188 months' imprisonment. (CR Doc. # 29; CR Doc. # 30; CR Doc. # 36 at 40-41). However, the Court told Bakowski that it would reduce his sentence to 180 months' imprisonment if Bakowski produced documents that his victims requested in order to pursue private remedies. (CR Doc. # 36 at 44-46). Bakowski did not file a direct appeal.

On October 31, 2011, Bakowski filed his initial section 2255 motion raising various claims for relief to which the Government filed a response. (CR Doc. # 40). In Bakowski's reply memorandum, however, Bakowski raised an additional claim: his counsel failed to file a notice of appeal after

3

being requested to do so. (See CR Doc. # 44). On July 30, 2012, this Court granted Bakowski's section 2255 motion, "but only to the extent that Bakowski may file a belated appeal in the related criminal case." (Id. at 2-3).

Thereafter, the Court vacated Bakowski's original judgment and, on August 13, 2012, entered an Amended Judgment maintaining the same sentence yet allowing Bakowski to file a direct appeal. (CR Doc. # 50). Bakowski directly appealed his final judgment to the United States Court of Appeals for the Eleventh Circuit. (CR Doc. # 53). On appeal, Bakowski raised one issue: whether this Court erred in denying Bakowski a two-point reduction for acceptance of responsibility. (Doc. # 32 at 3). On January 9, 2013, the Eleventh Circuit granted the Government' motion to dismiss the appeal pursuant to the appeal waiver included in Bakowski's plea agreement. (CR Doc. # 59). Bakowski filed the present Motion – his Third Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody – on May 9, 2013 (Doc. # 24), which is ripe for the Court's review.

<u>**DISCUSSION OF BAKOWSKI'S CLAIMS**</u>

I.   <u>**Ground One**</u>

Bakowski raises several arguments stemming from alleged due process violations. These claims are cognizable, as 28

4

U.S.C. § 2255 allows collateral attack on a sentence imposed in violation of the Constitution. See 28 U.S.C. § 2255.

### A.    Sub Claim One

Bakowski contends that he was denied sufficient time to object to United States Magistrate Judge Anthony E. Porcelli's Report and Recommendation concerning his guilty plea or to otherwise withdraw his guilty plea. (Doc. # 24 at 21). In support of his claim, Bakowski points to the following statement made by Magistrate Judge Porcelli at the Bond and Plea hearing:

> As I told you at the beginning of this hearing, if you do not object to my report in a timely manner and your plea is accepted, it will become very difficult, if not virtually impossible, for you to change your mind about your plea. If your plea's accepted and you are adjudicated guilty, a sentencing will be scheduled in your case and you'll be sentenced accordingly.

(CR Doc. # 41 at 46). Magistrate Judge Porcelli entered the Report and Recommendation concerning Bakowski's guilty plea on November 17, 2009. (Doc. # 15). This Court accepted Bakowski's guilty plea and adjudicated him guilty on November 20, 2009. (Doc. # 17). Bakowski argues that, once the Court accepted his plea and adjudicated him guilty – and in consideration of Magistrate Judge Porcelli's guidance – he

5

contacted his attorney, Stephen A. Leal. Bakowski avers that Mr. Leal "informed [Bakowski] that . . . the only thing he could do is be prepared for sentencing." (Doc. # 24 at 21).

The bottom of Magistrate Judge Porcelli's Report and Recommendation indicates the following:

> Failure to file written objections to this Report and Recommendation within ten (10) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B); M.D. Fla. R. 6.02.

(CR Doc. # 15). The Court notes that Bakowski's guilty plea was accepted prior to the expiration of the 10-day period. (See CR Doc. # 17). However, Bakowski has not demonstrated that he suffered any prejudice from the Court's doing so.

As an initial matter, Bakowski had other opportunities to challenge his plea. According to Rule 11 of the Federal Rules of Criminal Procedure, a defendant may withdraw a plea of guilty:

> (1) before the court accepts the plea, for any reason or no reason; or
> **(2) after the court accepts the plea, but before it imposes sentence if:**
>> (A) the court rejects a plea agreement under Rule 11(c)(5); or
>> (B) the defendant can show a **fair and just reason** for requesting the withdrawal.

Fed. R. Crim. P. 11(d) (emphasis added). In determining whether a defendant has established that a "fair and just reason" for withdrawal exists, a court may consider the totality of circumstances surrounding the plea. United States v. Buckles, 843 F.2d 469, 471-72 (11th Cir. 1988), cert. denied 490 U.S. 1099. "Factors analyzed include (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Id. at 472 (citations omitted). Upon review of these factors and the record before the Court, Bakowski has not met his burden. See United States v. Badger, 925 F.2d 101 (5th Cir. 1991) (Although criminal procedure rule authorizing withdrawal of guilty plea prior to sentencing upon showing of "any fair and just reason" should be construed and applied liberally, there is no absolute right to withdraw guilty plea.). In particular, as discussed more fully below, the Court finds that Bakowski's plea was entered knowingly and voluntarily, and Bakowski was satisfied with Mr. Leal's assistance throughout the plea process.

Moreover, the Court notes that Bakowski made no attempt to challenge his plea during the pendency of this matter,

despite this avenue for relief. In fact, Mr. Leal's affidavit indicates that Bakowski "maintained from the get go that he wanted to 'make things right' and did not wish to go to trial." (Doc. # 32-1 at 2). The record supports this contention. See <u>Owens v. United States</u>, 551 F.2d 1053, 1054 (5th Cir. 1977) (A court can rely on affidavits if they are otherwise corroborated by the record.). In fact, Bakowski's own statements at sentencing bolster this representation. Specifically, Bakowski provided, "[y]ou know, I have done a lot of wrong here, and I'm trying honestly to correct it. I want to go ahead and correct what I can." (CR Doc. # 36 at 37). Bakowski went on to say:

> The only thing I wanted to make, I want to apologize to everybody here for the wrong I have done and the harm I have done. I can't reduce that. I just want them to know that before, within the short period of time we will start paying this money back. That's going to be my first concern. They will get their money back, everything they invested in me that they lost on fraudulent amounts. And I'm very, very -- I'm sincere about that, Your Honor. . . .

(<u>Id.</u> at 39). Therefore, there is no indication in the record that Bakowski wanted to proceed to trial.

Further, even if Bakowksi withdrew his plea and proceeded to trial, he is still unable to demonstrate prejudice in his inability to do so. Nothing in the record

suggests that Bakowski had available a defense that would likely have borne fruit at trial. Upshaw v. United States, No. 2:07-cv-111-FtM-33DNF, 2008 WL 638261 at *1 (M.D. Fla. Mar. 5, 2008) (citing Hill, 474 U.S. at 59). Therefore, the Court finds that this claim lacks merit.

**B.   Sub Claim Two**

Bakowski contends that Magistrate Judge Porcelli "went beyond his scope of authority of law in adjudicating the defendant guilty [without] the waiver or consent to adjudicate him guilty in place of [an] Article Three Judge." (Doc. # 24 at 22). In particular, Bakowski points to the Courtroom Deputy's minutes from the Bond and Plea hearing held before Magistrate Judge Porcelli, which indicate the following: "adjudication of guilt made." (Id. at 21; see CR Doc. # 11). However, this notation was made in error.

As discussed above, Judge Magistrate Porcelli entered a Report and Recommendation regarding Bakowski's guilty plea, which this Court then accepted. (CR Doc. ## 15, 17). At that time, this Court adjudicated Bakowski guilty. (CR Doc. # 17). Aside from this procedural development, the Court also notes that Magistrate Judge Porcelli provided Bakowski a thorough explanation of Magistrate Judge Porcelli's role and authority versus that of this Court:

9

[THE COURT:] Before we can go forward with your plea, I do need to advise you that you have a right to have your plea heard by the district judge in this case. The district judge in this case is Virginia Covington.

Let me explain to you the differences between Judge Covington's authority as a district judge and my authority as the magistrate judge.

Judge Covington has the authority not only to hear your plea, but she is the judge that will adjudicate you guilty. Additionally, if you are found guilty, Judge Covington will then sentence you. If you decide to enter a not-guilty plea, it is Judge Covington who would try your case.

My authority, on the other hand, is limited. It is limited to only conducting this hearing to determine whether your plea is voluntary and knowing and issue a report to that effect to Judge Covington. Again, it is Judge Covington who will decide whether to accept your plea and adjudicate you guilty.

Do you understand the differences between my authority as the magistrate judge --

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: -- and Judge Covington's authority?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you have the absolute right to have this plea heard by Judge Covington?

THE DEFENDANT: Yes.

THE COURT: Now, I have before me a form that appears to have been signed by you. It's entitled "Notice Regarding Entry of a Plea of Guilty," and at the bottom is a consent in which you have consented to have this plea hearing conducted before me. I'll show you that form. Is that your signature at the bottom?

THE DEFENDANT: Yes, it is, Your Honor.

> THE COURT: Do you wish to have this plea
> hearing today before me?
> THE DEFENDANT: Yes, I do.

(CR Doc. # 41 at 11-12). Thus, there is nothing in the record to support Bakowski's contention that Magistrate Judge Porcelli adjudicated him guilty and, therefore, this claim fails.

### C.   **Sub Claim Three**

Bakowski argues that his constitutional rights were violated when he was allegedly denied "an opportunity as promised by the Government and the Court to litigate the amount of loss at sentencing." (Doc. # 24 at 22).

During the Plea and Bond hearing, the Government explained its position regarding the amount of loss. (See CR Doc. # 41). Furthermore, at that time, Bakowski was informed that he would have the opportunity to contest that amount at sentencing. (Id. at 42-44). The Presentence Investigation Report (PSR) prepared in anticipation of sentencing indicated that the amount of loss was between $7,000,000.00 and $20,000,000.00. (PSR ¶ 33). Therefore, the Probation Office increased Bakowski's base offense level by 20 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(K). (Id. at ¶ 33).

11

Since there were "no objections to either the factual statements or the application of the guidelines, the Court adopt[ed] the statements and guideline applications as its findings of fact," and determined the applicable guidelines were a total offense level 32, with a criminal history category of 1, resulting in a guidelines range of 121 to 151 months' imprisonment. (CR Doc. # 36 at 8). In other words, Bakowski was afforded the opportunity to contest the amount of loss at sentencing, but elected not to do so.

Bakowski further contends that his "restitution plan filed although late in the hour still put the [G]overnment and the [C]ourt on notice of his objections to the amount of loss by the discrepancies here in the report filed." (Id. at 23). "But the Court failed to hear any [argument] about amount of loss because of the [Court's] position it was late in the hours." (Id.). In reference to the timing of the filing, the Court stated the following:

> Next, Mr. Leal, your document that you filed on Friday. Mr. Leal, the next time you file something that you have obviously put a lot of work into, and I don't doubt for a moment it took a lot of effort to produce 24 documents, when you file it the day before the hearing it makes it hard for the probation office to go through this and analyze your very hard work and the amount of effort that it took. But when you file it at the eleventh hour,

right before the hearing, it really makes it hard.

(CR Doc. # 36 at 25). However, to the extent that Bakowski understood these statements to mean that the Court did not consider these arguments, he is incorrect. In fact, the Court not only reviewed these documents but heard oral argument from Mr. Leal regarding this issue. (Id. at 25-28). Therefore, Bakowski's claim is without merit.

   **D.   Sub Claim Four**

Bakowski argues that the Government failed to have a final hearing on "the million dollar threshold[1] and produce the identity of investors of million dollar [breach] of threshold." (Doc. # 24 at 23). Bakowski avers that "[t]he amount turned out to be quite significantly less than one million dollars and Mr. Bakowski was bound by the amount in [the] plea agreement because the [G]overnment failed to litigate the issue at sentencing." (Id. at 24).

As an initial matter, Bakowski was provided an opportunity to litigate the amount of loss. The time to present such an argument would have been as an objection to

---

[1]   Although amount has no bearing on guilt for an offense under 18 U.S.C. § 1014, $1,000,000.00 is one of the tiers enumerated in the U.S.S.G. § 2B1.1(b)(1) loss table, which implicates a sentencing enhancement.

the PSR at sentencing. Bakowski made no such objection. As explained above, since there were "no objections to either the factual statements or the application of the guidelines, the Court adopt[ed] the statements and guideline applications as its findings of fact." (CR Doc. # 36 at 8).

There is further no support in the record for Bakowski's contention that he did not know who the investors were. First, Attachment A to the plea agreement identified the victims of Bakowski's scheme, as well as their corresponding amount of loss. (CR Doc. # 8-2). Second, many of the victims spoke at both of Bakowski's sentencing hearings. (See CR Doc. ## 36, 38). Therefore, the Court finds no support for this claim and it must fail.

### E.   Sub Claim Five

Bakowski alleges that the Government "withheld exculpatory evidence and used false evidence in convicting" him. (Doc. # 24 at 25). Namely, Bakowski contends that the "affidavits of loss were in fact false claims of inflated amounts that the [G]overnment knew to be not reflect[ive] of the losses or true losses suffered." (Id. at 26). Bakowski further provides that he will produce the "findings that the million dollar threshold was never [breached] with investors['] name[s] and purchase information." (Id.). He

14

submits that "the affidavits of loss do not add up to or can be [corroborated] to reflect with[] certainty the amount of loss of [$]16,198,278.00." (Id.).

Nothing in the record supports Bakowski's contentions. Attachment A to the plea agreement lists the victims of Bakowski's scheme, indicating that the victims "incurred a loss of at least $16,198,278.00." (PSR ¶ 28; see CR Doc. # 8-1). In line with that figure, the PSR states that "the offense involved losses between $7,000,000 and $20,000,000." (PSR ¶ 33). At no time did Bakowski object to the findings of the PSR. (See PSR, CR Doc. ## 36, 38). Furthermore, this mortgage fraud scheme involved the re-sale of mortgages on the same properties two or three times without revealing the existence of the earlier mortgages and misrepresenting that existing mortgages had been satisfied. (CR Doc. # 8 at 12-15). Therefore, there is ample evidence in the record to support the Government's contention that the $1,000,000.00 threshold was breached.

Finally, Bakowski avers that he can produce evidence that the million dollar threshold was not breached. As discussed more fully below, this Court provided Bakowski ample opportunity to produce this information during the

pendency of this case. Accordingly, Bakowski's claim is without merit.

**F.   Sub Claim Six**

Bakowski argues that, in an attempt to induce a guilty plea, the Government "used and employed a false document." (Doc. # 24 at 26). Specifically, Bakowski avers that the Government presented a HUD-1 form as indicating that Bakowski violated 18 U.S.C. § 1014 by falsely using the form. (Id.). Bakowski submits that the form was prepared by the title company and not by Bakowski. (Id.).

As an initial matter, Bakowski's plea agreement did note the falsity related to the HUD-1 form. (CR Doc. # 5 at 15). Furthermore, as stated in the factual basis of his plea agreement and agreed to by Bakowski:

> Bakowski himself willfully made a direct, false statement to Bank of America; he made the statement with the intent to influence the Bank's action upon the loan, i.e., to get the loan approved. Bakowski signed an "AFFIDAVIT OF NO LIENS" that Bakowski, who had been involved with [] each of the earlier liens and sales of the property since 2004 knew to be false.
>
> On May 25, 2007, relying upon the false statement, Bank of America funded the loan and, in so doing, was defrauded as were the home buyers themselves because Bakowski's statement - the Affidavit of No Liens - was false.

(CR. Doc. # 5 at 15; CR Doc. # 41 at 40). Bakowski's actions – as described above – amounted to a violation of 18 U.S.C. § 1014. Nevertheless, Bakowski's argument that "[i]f not for the warning and the allegation of applicability of law [Bakowski] would not have plead guilty," is unavailing. Again, nothing in the record suggests that Bakowski had available a defense that would likely have borne fruit at trial. Upshaw, 2008 WL 638261 at *1 (citing Hill, 474 U.S. at 59). Therefore, Bakowski's contentions are unsupported and without merit.

   G.   **Sub Claim Seven**

   Bakowski contends that the Government engaged in prosecutorial misconduct "in vouching for the credibility of [its] witness Robert Marquette Jr. who was in fact a proxy for the [G]overnment as an investigator with the [Government's] sanction to investigate in this case." (Doc. # 24 at 26). Specifically, Bakowski avers that the Government "allowed Mr. Marquette to answer for the U.S. government when asked by the [C]ourt if the [G]overnment thought Mr. Bakowski had complied with the document transfer instead of asking the lead investigator J. Wilson to answer for the [G]overnment." (Id.). Bakowski further alleges that the Government improperly furnished documents to Mr. Marquette to aid his

17

"testimony" and failed to provide Bakowksi with a witness statement. (Id. at 27). Bakowski also avers that Mr. Marquette fabricated a list of "118 items many of the items he had no standing to request." (Id. at 28).

The record indicates, however, that Mr. Marquette was not a Government witness, but one of the victims of Bakowski's mortgage fraud scheme. (See CR Doc. ## 36, 38). As explained above, the Court continued Bakowski's sentencing with the hope that the victims – including Mr. Marquette – would be able to recover documents from Bakowski needed to pursue private claims. (See Id.). When the sentencing resumed, the Court asked for the Government's opinion as to whether Bakowski fulfilled his obligation. In response, the Government stated: "I think it might be easier if Mr. Marquette [responded], since he provided me a list yesterday." (CR Doc. # 36 at 4). The Court indicated that it would hear from Mr. Marquette after hearing from the Government. (Id.). At no time did the Government call Mr. Marquette as a witness, identify him as a Government agent, or otherwise allow Mr. Marquette to speak on behalf of the Government. (See Id.). Therefore, Bakowski's claim is without merit.

**II.  <u>Ground Two</u>**

Bakowski challenges his sentence as unconstitutional based on his receiving ineffective assistance of counsel. Ineffective assistance claims are generally cognizable under 28 U.S.C. § 2255. See Lynn v. United States, 365 F.3d 1225, 1234 n. 17 (11th Cir. 2004)(ineffective assistance claims should be decided in section 2255 proceedings).

To prevail on a claim of ineffective assistance of trial or appellate counsel, a defendant must meet the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland's two-part test requires a defendant to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. Id. at 697.

The two-pronged Strickland test is applicable to ineffective assistance of counsel claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of Strickland remains the same in that the attorney's conduct must fall within the range of reasonable conduct. Hill, 474 U.S. at 58.

19

The second prong of the <u>Strickland</u> test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. <u>Hill</u>, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Id.</u> The best way to evaluate whether there is a reasonable probability a defendant would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. <u>Upshaw</u>, 2008 WL 638261, at *1 (citing <u>Hill</u>, 474 U.S. at 59).

### A.   <u>Sub Claim One</u>

Bakowski argues that, despite having paid Mr. Leal $10,000.00 as a retaining fee, Mr. Leal failed to represent Bakowski at a meeting with Investigator Jay Wilson. (Doc. # 24 at 28). Bakowksi contends that – due to Mr. Leal's absence – Bakowksi provided evidence used against him. (<u>Id.</u>). Bakowski submits that Mr. Leal's absence also allowed Investigator Wilson to question him in violation of his *Miranda* rights. (<u>Id.</u>). Regardless of whether Mr. Leal's

20

performance was deficient, however, Bakowski is unable to demonstrate that he suffered any prejudice.

As an initial matter, the Court notes that Investigator Wilson worked for Florida's Office of Financial Regulation's Bureau of Financial Investigations. (See CR Doc. # 38 at 15). Investigator Wilson did not have the authority to arrest Bakowski. See Fla. Stat. § 20.121(3)(a)(2) ("If,4 during an investigation, the office has reason to believe that any criminal law of this state has or may have been violated, the office shall refer any records tending to show such violation to state or federal law enforcement or prosecutorial agencies and shall provide investigative assistance to those agencies as required."). Furthermore, *Miranda* does not apply in this instance, as Bakowski's interview with Investigator Wilson was voluntary and non-custodial.

In addition, Bakowski is unable to demonstrate that he suffered any prejudice due to Mr. Leal's absence at the interview. Throughout sentencing, this Court emphasized the importance of Bakowksi's compliance in providing information to authorities and victims. (See CR Doc. ## 36, 38). Specifically, at the first sentencing hearing held on July 1, 2010, the Court considered whether Bakowski supplied pertinent documents in determining whether his actions

warranted a two-level reduction for acceptance of responsibility. (See CR Doc. # 38). In making this determination, the Court first asked Investigator Wilson for his opinion. (Id.).

> THE COURT: Let me finish asking my question. So, he's given you everything that you've needed?
> STATE INVESTIGATOR WILSON: Everything that I needed to do my investigation, ma'am.
> THE COURT: So, in your opinion, he deserves the acceptance of responsibility with respect to the documents that you've requested?
> STATE INVESTIGATOR WILSON: With that (nodding head).

(CR Doc. # 38 at 44). The Court continued this line of questioning and asked the Government for its opinion.

> THE COURT: Let me ask Mr. Palermo a question. Thank you.
> Mr. Palermo, do you believe it's in the victims' best interest to continue this sentencing in the hope of getting any additional documents; or as far as you know, everything that's available, has it been turned over?
> If there's a hope of getting some additional documents, I'm going to continue it for 30 days. If there isn't, then you know what? They deserve some closure on this. I'm going to sentence the Defendant and move on.

(Id. at 45). The Court decided to continue the sentencing hearing 90 days to provide Bakowski "an opportunity to go through and obtain [the requested] documents in an attempt to

help [the victims], in private actions try to recover any of these monies." (Id. at 53).

At the second hearing – held on October 13, 2010 – the Court declined to grant Bakowski a two-level reduction for acceptance of responsibility. (CR Doc. # 29 at 3).

> [THE COURT:] It says here that in order to get the two-level reduction the defendant has demonstrated an affirmative acceptance of personal responsibility for his criminal conduct. When you don't get information back to the victims that they need, that is not an affirmative acceptance of personal responsibility for criminal conduct. So he's not going to get the two-level reduction.

(CR Doc. # 36 at 24). Although Bakowski was not granted a two-level reduction, Bakowski's initial compliance with Investigator Wilson was a contributing factor in the Court's decision to continue his sentencing to provide Bakowksi the opportunity to aid the victims and demonstrate an acceptance of responsibility. Therefore, Bakowski's contention that he was prejudiced by Mr. Leal's absence at the meeting with Investigator Wilson because Bakowski provided information is unavailing and, thus, this claim fails.

## B.   Sub Claims Two and Three

Bakowski contends that Mr. Leal's representation was ineffective, because Mr. Leal failed to file a motion for

discovery or a Bill of Particulars upon the Government. (Doc. # 24 at 29). Bakowski avers that "Mr. Leal failed to make discovery or any investigation into the [Government's] case or evidence against [Bakowski] before pleading [Bakowski] guilty at [the] arraignment or Bond Hearing." (Id.). Bakowski claims that Mr. Leal "committed misrepresentation" by "claiming that [Mr. Leal] performed [an] accounting and examination of all documents he did not review or go over with [Bakowski]." (Doc. # 24 at 29-30). Bakowski further argues that Mr. Leal failed to hire a forensic accountant to investigate the amount of loss, despite being paid to do so. (Id. at 29).

In his affidavit, Mr. Leal states that he "reviewed numerous transactions with [Bakowski] that were of a large representative sample of the kind the Government could have broken down into individual counts if [they] chose to go forward and litigate the allegations against [Bakowski]." (Doc. # 32-1 at 2). The record supports this contention. See Owens, 551 F.2d at 1054 (A court can rely on affidavits if they are otherwise corroborated by the record.). At the Bond and Plea hearing, Mr. Leal explained to Magistrate Judge Porcelli, in front of Bakowski, how Mr. Leal had examined a sample of the representative documents:

THE COURT: Mr. Leal, are you satisfied that the factual basis as outlined by the Government is sufficient for each of the essential elements of Count 1 of the information?

MR. LEAL: I am, Your Honor. We've been through the facts; and actually, as you can see, there were some revisions made to it. I think if there was anything that I had any question about it, the indication that it was over a million dollars on the -- on page 13 of the amounts arrived at, gross receipts, I would say it does appear that would be the case.

I have not sat down and looked at every single document for every single transaction to arrive at that particular figure, but the Government believes it to be sound based on the math that we've done. So, to the extent it appears to be a million dollars or more, we agree with that.

(CR Doc. # 41 at 41-42). Mr. Leal's representations to Magistrate Judge Porcelli are corroborated by the fact that Mr. Leal prepared and submitted numerous documents attached to and including Defendant's Proposed Final Restitution Calculation and Notice of Restitution Repayment Plan. (See CR Doc. # 28, 28-1, 28-2, 28-3, 28-4, 28-5, 28-6, 28-7). These filings indicate that Mr. Leal had reviewed the relevant documents.

Based on the record, Mr. Leal had no reason to formally request the documents, as Mr. Leal had reviewed and discussed them with the Government. Furthermore, to the extent that Bakowski claims that Mr. Leal's statements amount to

misrepresentation, that assertion is overcome by Bakowski's

own representations at the Bond and Plea hearing:

> THE COURT: Are you fully satisfied with the advice and representation that you've received in this case?
> THE DEFENDANT: Yes, I am, Your Honor.
> THE COURT: Is there anything you asked Mr. Leal to do that he has not done?
> THE DEFENDANT: No, Your Honor.
> THE COURT: You think Mr. Leal has done anything in your case in an unsatisfactory manner?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Do you have any issues or concerns at all regarding the advice and representation you have received?
> THE DEFENDANT: Not at all, Your Honor.

(CR Doc. # 41 at 15). Finally, Mr. Leal states that Bakowski

never asked him to hire a forensic accountant nor paid Mr.

Leal $85,000.00 to do so. (Doc. # 32-1 at 2). This averment

is also supported in the record. At sentencing, the Court

explained Bakowski's obligation to produce the documents to

the victims. In response, Mr. Leal noted the gravity of the

request given that Bakowski was in custody and Mr. Leal was

a retained attorney:

> MR. LEAL: Your Honor, just to clarify so I understand, because obviously Mr. Bakowski is in custody. His home has been foreclosed on. His wife's been evicted. She no longer lives there. What documents they have are in storage. So I understand, am I supposed to be trying to accommodate any requests that haven't already been

made for deeds, copies of deeds, notes? What's the
--

THE COURT: You should talk to them today - the
victims.

MR. LEAL: I intend to stick around. I'll take
a list from anybody that's here. If they have a
specific document as to a specific property, I will
be happy to compile all that so we can look into
it. It's just a lot of these requests have been
made over the last couple of years; and to the best
of my knowledge and his knowledge, he's provided
out what he has on all of these.

THE COURT: We're going to do it before
sentencing. You know, you're court-appointed.

MR. LEAL: No, I'm not, Your Honor.

THE COURT: You're not court-appointed; you're
retained?

MR. LEAL: Your Honor, I was originally
handling the state-court case which revolved this
case, so I've been on this the last two years.

THE COURT: It said it was CJA. That's an error?

MR. LEAL: Yes, it is.

THE COURT: You are retained. Well, you're
retained, but I'm going to ask you to please do
that, and I appreciate it very much, because I was
going to say, if you were court-appointed, there
are funds available for you to have a -- I would
appoint an investigator to assist you with that so
that there would be somebody with accounting --
forensic accounting skills who could help go
through those documents. But I can't do that if you
are retained. So, I -- that's something that I'm
willing to look at. I don't know how to do that if
you're retained. I really don't know how to do that.
. . .

(CR Doc. # 38 at 48-49). Further, the Court mentioned multiple

times that the complex nature of the underlying mortgage fraud

scheme required the skill of a forensic accountant. (Id. at 17, 48). In other words, Bakowski had numerous opportunities to express his desire to hire someone with forensic accounting expertise and chose not to do so. Therefore, the record does not support Bakowski's contention that he requested Mr. Leal to hire a forensic accountant or supplied the money to so. Accordingly, Sub Claims Two and Three fail.

## C.   Sub Claim Four

Bakowski contends that Mr. Leal failed to consult with Bakowski regarding "changes of law and offers by [G]overnment or [C]ourt." (Doc. # 24 at 30). As a result, "[t]his provided a windfall of restitution for the victims making them better from what they initially invested in the scheme. The victims unlawfully gain [an] advantage in the duplicate accounting and the non reduction of mandatory deductions aforementioned." (Id. at 31).

As an initial matter, Bakowski does not identify the alleged changes in law or offers made by this Court, and the Court is unaware of any. With respect to the Government, Bakowski states that the Government offered:

> [A] solution of law or change in procedure and administration of law regarding the restitution statute from Title 18 U.S.C. § 3663A to Title 18 U.S.C. § 3664(j)(2)(a). The complicated changes in

offsets for compensatory damages, warranted in the
very least to a full explanation by Attorney Leal
to the defendant what the change in law meant in
applications to the defendant.

For support, Bakowski points to the sentencing transcript,

which provides in relevant part:

> [Government:] That being said, I think I have
> a compromise solution. The restitution statute,
> Title 18, United States Code Section 3664 and
> subsection J(2)A relates to offsets for
> compensatory damages received in civil actions. As
> far as I can tell, in Florida law any victim, any
> monies a victim receives that aren't punitive or
> compensated for, that would include the foreclosure
> action ongoing to secure the property in their
> favor. I think the Court can order the full amount
> of restitution and just designate in the order it's
> to be offset by the net proceeds realized on the
> disposition of the property. I think what that
> would do is give Mr. Bakowski the benefit if these
> are legitimate transactions, them being unwound in
> the future by state court and is on board with this
> language and willing to sort of work in the future
> to assure that the amount is offset as these
> transactions are unwound. I think that would
> achieve his request, but also sort of achieve the
> maximum restitution amount for the victims.
>
> As a side note, at some point under, I think
> it's Title 18, United States Code, Section 3664
> Subsection l, the amount of restitution ordered by
> the Court for some of these victims becomes almost
> -- plus, I think the defendant becomes collaterally
> estopped from defining the substantial – an
> admission on his part would be a value to them in
> an effort to unwind it all.

(CR Doc. # 36 at 29-30). However, this discussion relates to restitution and the restitution order did fall under 18 U.S.C. § 3663 (a) and (b). Section 3664 deals with the issuance and enforcement of restitution orders. See 18 U.S.C. § 3664. In addition, Bakowski is unable to demonstrate prejudice, because the offset provision he challenges is to his benefit. Specifically, if a victim makes a qualifying recovery against his loss, the statute for enforcing restitution orders provides a way to reduce the amount of restitution Bakowski would owe to the victim.

Furthermore, the Government submits that the Information was the only offer from the Government (Doc. # 30 at 11), and Bakowski does not identify an additional offer. Moreover, Bakowski's plea colloquy makes clear he knew of the plea agreement and knowingly and voluntarily agreed to it:

> THE COURT: Do you feel that you understand the charge against you in Count 1 of the information?
> THE DEFENDANT: Yes, I do.
> THE COURT: Do you think you need any more time to discuss that charge with Mr. Leal?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Have you fully discussed your options in this case, that is, any defenses you may have to this case?
> THE DEFENDANT: Yes, I have.

(CR Doc. # 41 at 15). A defendant's representations made during a plea hearing, along with the findings made by the court accepting the plea, constitute "a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see United States v. Gonzalez-Mercado, 808 F.2d 796, 800-01 n.8 (11th Cir. 1987) (noting the strong presumption that statements made during a change of plea colloquy are true and that a defendant should not be permitted to circumvent the finality of a guilty plea). Therefore, the Court finds that Bakowski's claim fails.

### D.   Sub Claim Five

Bakowksi argues that Mr. Leal provided ineffective assistance by failing "to litigate at sentencing the amount of loss and the million dollar threshold amount from gross receipts of FDIC banks." (Doc. # 24 at 31). "The failure to argue or litigate for the correct and accurate information in respect to sentencing upon correct amounts left [Bakowski] with a longer period of incarceration and a higher amount of loss to repay." (Id.).

As Magistrate Judge Porcelli explained at the Bond and Plea hearing, the plea agreement was written to reflect the fact that the amount of loss might change with additional revelations. (See CR Doc. # 41). In other words, by signing

the plea agreement, Bakowksi was not agreeing to a particular

amount of loss:

>    THE COURT: And just to be clear, my question
> is, at this time is there an agreement between the
> parties as to what the loss or the gross gains would
> be in regards to how they may have an effect upon
> the guidelines?
>
>    MR. LEAL: Judge, I -- I'll speak to that. We've
> got a range in mind of where we think it's going to
> be, which is why the language is altered the way it
> is. My only concern is I'm sure the Court's aware
> that that $1 million is a threshold figure that
> applies to sentencing guidelines, and obviously, if
> it turns out in the course of the investigation
> that he even came in one penny under that or
> whatever it ends up being, I want to be able to
> address it at sentencing and not be bound by the
> fact that we have this figure in here.
>
>    Frankly, I suspect it's going to be at least
> that or more. So, I don't think that's an issue;
> but because we are not a hundred percent certain,
> in an abundance of caution, that's the only reason
> I made that request.
>
>    THE COURT: And --
>    MR. ZITEK: Judge, I would just say in any facts
> like this -- this is based upon what we know to be
> the case at this time. Obviously --
>    MR. LEAL: Right.
>    MR. ZITEK: These kind of facts can change
> right up to sentencing to go up or down.
>    MR. LEAL: And Mr. Palermo has indicated the
> same position, Your Honor. So, that's not been an
> issue.
>    THE COURT: That's all I wanted to be clear of
> on the record. I certainly appreciate these
> circumstances, as they are common; but I wanted to
> make sure that there wasn't a requirement by the

> Government that there be an agreement by Mr.
> Bakowski. So, if the amount is less, then Mr.
> Bakowski is not bound by the amount in the plea
> agreement.

(CR Doc. # 41 at 42-43).

Furthermore, there is nothing in the record to suggest that the amount of loss would be less than $1,000,000.00, thus not implicating the guideline enhancement. Rather, Attachment A to the plea agreement lists numerous victims and their respective amounts of loss, easily totaling over $1,000,000.00. (CR Doc. # 8-1). The Court also notes the nature of this mortgage fraud scheme involved the re-sale of mortgages on the same properties two or three times without revealing the existence of the earlier mortgages and misrepresenting that existing mortgages had been satisfied. (CR Doc. # 5 at 12-15). As set forth in the factual basis of the plea agreement:

> During an interview with Florida's Office of
> Financial Regulation, Bakowski was cooperative and
> indicated that the scope and scale of the scheme
> involved over $12,000,000 in investments and
> provided spreadsheets to law enforcement supporting
> his figure. Losses related to Bakowski's conduct
> appear to exceed $7,000,000 and also appear to be
> less than $20,000,000.
> Many of the investors themselves took out
> loans to buy the assignments of mortgage; from

these loans, Bakowski derived more than $1,000,000
in gross receipts from financial institutions.

(Id. at 13). Therefore, Mr. Leal had no good faith basis to
contest the sentencing enhancement, and counsel is not
ineffective for failing to raise a meritless issue. Owen v.
Sec'y for the Dep't of Corr., 568 F.3d 894, 915 (11th Cir.
2009) (citing Ladd v. Jones, 864 F.2d 108, 110 (11th Cir.
1989)). Accordingly, this claim is without merit.

### E.   Sub Claim Six

Bakowski contends that Mr. Leal provided ineffective
assistance by failing to represent Bakowski at the pre-
sentence interview conducted by the United States Probation
Office. (Doc. # 24 at 31). Bakowski avers that, in turn, his
"objections were not transmitted to the U.S. Department of
Probation as requested by [Bakowski]." (Id.). Bakowski
submits that Mr. Leal's absence "left a late filing the only
option to voice the objections in [the] form of [Bakowski's]
restitution and calculation plan as the only avenue to voice
his objections." (Id.). Bakowski argues that, due to the late
filing, the Court "refuse[d] to address or hear the objections
to the amount of restitution and calculations therein."
(Id.).

Regardless of counsel's conduct, however, Bakowski is unable to demonstrate that he suffered any prejudice from Mr. Leal's absence at the pre-sentence interview. As explained above, the Court did review the documents referenced by Bakowski. Further, the Court heard argument regarding the issues raised in the Proposed Final Restitution Calculation and Notice of Restitution Repayment Plan (CR Doc. # 28) at sentencing (CR Doc. # 36 at 25-28). Therefore, this claim has no merit.

## III. **Ground Three**

Bakowski claims that the accounting of victims is incorrect. (Doc. # 24 at 32). On a collateral attack, only constitutional claims, jurisdictional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable. See e.g., United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988). Because the accounting of victims is not a jurisdictional or constitutional issue, Bakowski can assert this claim only if the alleged error constitutes a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Reed v. Farley, 512 U.S. 339, 348 (1994). Ordinary errors, even those that would

be meritorious on direct appeal, are not cognizable in a section
2255 proceeding. <u>Lynn v. United States</u>, 365 F.3d 1225, 1233 &
n.15 (11th Cir. 2004) (citing numerous Eleventh Circuit opinions
holding that various errors are not cognizable under section
2255).

Bakowski has provided insufficient evidence to demonstrate
that the alleged miscalculation of victims amounted to a
complete miscarriage of justice. The Court also notes Bakowski's
representation that "[a]dditional documents in support can be
furnished at the order of the Court." (Doc. # 24 at 32). As
previously discussed, this Court provided Bakowski ample
opportunity to locate and provide any relevant documents by
continuing his sentencing 90 days, but he failed to do so. The
Court is unmoved by the offer at this late stage in the
proceedings.

Finally, Bakowski argues that "the application of using a
special skill or business license . . . was given and cannot be
given with elderly enhancement according to amendments of [the]
USSG." (<u>Id.</u>). However, even construing Bakowski's allegation
liberally, the Court finds this argument nonsensical and
patently frivolous. Bakowski provides no support for his
contention nor does he aver how he suffered any prejudice from
the alleged "enhancement." (<u>Id.</u>). Therefore, Ground Three fails.

IV.  **Ground Four**

Bakowski raises a claim based on denial of his right to a fair trial, which is a constitutional issue cognizable under as 28 U.S.C. § 2255. See 28 U.S.C. § 2255. Specifically, Bakowski argues that the Government "used false evidence . . . to induce a guilty plea [a]nd secure a conviction." (Doc. # 24 at 32). Bakowski contends that the Government failed to perform a proper accounting of the amount of loss. (Id. at 32-33). Bakowski submits that he "is not attacking the restitution judgment [in the present Motion] but attacking the false information relied upon by the [C]ourt and the misrepresentations made by the [G]overnment as to the due process and the truthfulness of their factual allegations. . . ." (Id. at 33).

As discussed more fully above, Bakowski did not enter a guilty plea to a specific amount of loss. At the Bond and Plea hearing, all parties – including Magistrate Judge Porcelli – indicated that the amount was subject to change and Bakowski would not be bound by the number set forth in the plea agreement. (See CR Doc. # 41 at 42-43). Furthermore, as the transcript indicates, Bakowski was on notice as to the Government's position on the amount of loss, and Bakowski

37

entered his guilty plea knowingly and voluntarily. (<u>Id.</u> at 42-43, 45). Therefore, Bakowski's claim is without merit.

**V.**   <u>**Ground Five**</u>

Bakowski raises claims stemming from alleged due process violations. These claims are cognizable, as 28 U.S.C. § 2255 allows attack on a sentence imposed in violation of the Constitution. <u>See</u> 28 U.S.C. § 2255. Specifically, Bakowski alleges "improper judicial participation" by Magistrate Judge Porcelli. The only claim not previously addressed by the Court is Bakowski's contention that "[Magistrate] Judge Porcelli improperly set forth a hypothetical which Bakowski relied on in entering his plea." In particular, Bakowski points to the following guidance from Magistrate Judge Porcelli:

> THE COURT: That's all I wanted to be clear of on the record. I certainly appreciate these circumstances, as they are common; but I wanted to make sure that there wasn't a requirement by the Government that there be an agreement by Mr. Bakowski. **So, if the amount is less, then Mr. Bakowski is not bound by the amount in the plea agreement.**

(CR Doc. # 41 at 43) (emphasis added). Magistrate Judge Porcelli engaged in this discussion to ensure that Bakowski was not bound by the amount of loss stated in the plea agreement. (<u>See</u> <u>Id.</u>). As discussed more fully above, Mr. Leal

and the Government confirmed that was the case. (Id.). Therefore, Bakowski is unable to demonstrate that he suffered any prejudice and this claim fails.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Bakowski's Motion under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. # 24; CR Doc. # 64) is **DENIED.**

(2) The Clerk is directed to enter judgment against Bakowski and to **CLOSE THIS CASE.**

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

The Court declines to issue a certificate of appealability because Bakowski has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 1915(a)(3). Bakowski shall be required to pay the full amount of the appellate filing fee pursuant to § 1915(b)(1) and (2).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, on this 26th day of January, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record
Bakowski